# SETTLEMENT AGREEMENT AND RELEASE

This Agreement (the "Agreement") is made as of the Execution Date (as defined herein) by the bankruptcy estate of David DeVeau ("DeVeau") through Donald R. Lassman, the duly appointed chapter 7 trustee of that estate (the "Trustee"), on the one hand, and Progressive Select Insurance Company ("Progressive Select") on the other hand. Each of the foregoing is a "Party" and collectively "Parties."

## RECITALS

WHEREAS, prior to the Petition Date (defined below), a civil action was filed in the Circuit Court of the Sixteenth Judicial Circuit In and For Monroe County, Florida, by plaintiff Ashley Rierson ("Rierson") against DeVeau, Latrice Pla and Abraham Baker, Case No. 44-2011-CA-978-P (the "Personal Injury Case");

WHEREAS, Progressive Select issued the Policy (as defined below) to DeVeau pursuant to which Progressive Select has been providing a defense to DeVeau in the Personal Injury Case, under reservation of rights, and, more recently, to the Trustee in addition to DeVeau;

WHEREAS, DeVeau is the named insured under the Policy and there are no additional named insureds under the Policy;

WHEREAS, prior to the Petition Date, Progressive Select filed an action against Rierson and others in the Fifteenth Judicial Circuit In and For Palm Beach County, Florida, Case No. 50-2011-CA-017400XXXXNB, seeking certain declaratory relief (the "Coverage Case");

WHEREAS, after the Petition Date, the Trustee filed an action against Progressive Select and others in the Sixteenth Judicial Circuit In and For Monroe County, Florida, Case No. 44-2016-CA-000055A001PK, asserting various claims (the "Trustee's Monroe County Case");

Error! Unknown document property name.
Error! Unknown document property name.

WHEREAS, Rierson has asserted a Counter-Claim against Progressive Select in the Coverage Case (the "Counter-Claim");

WHEREAS, Rierson has also asserted Cross-Claims against Progressive Casualty Insurance Company, Anthony Johnson and Robin Gadbilao in the Trustee's Monroe County Case (the "Cross-Claims");

WHEREAS, on August 24, 2015 (the "Petition Date"), DeVeau filed voluntary petition for relief under chapter 7 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Massachusetts (Eastern Division), Case No. 15-13300-FJB (the "Bankruptcy Case");

WHEREAS, in the Bankruptcy Court, Rierson has filed two separate adversary proceedings against DeVeau:

(i)     a Complaint Objecting to Discharge Under 11 U.S.C. § 523(a)(2)(A), Case No. 16-01115 (the "Discharge Complaints"), seeking, *inter alia*, a determination that Rierson's claims are not dischargeable in DeVeau's bankruptcy; and

(ii)    a Complaint Objecting to Discharge Under U.S.C. § 727(a)(2), § 727 (a)(4) and § 727(a)(5), Case No. 16-01116, seeking, *inter alia*, to deny DeVeau a discharge altogether;

WHEREAS, in the Bankruptcy Court, the Trustee has filed, as an adversary proceeding against Progressive Select, a Complaint asserting claims for fraudulent transfer, unjust enrichment and breach of the implied covenant of good faith and fair dealing, Case No. 16-01166 (the "Fraudulent Transfer Case");

WHEREAS, the Trustee has reached an agreement with Progressive Select to resolve any potential disputes regarding the Policy and all disputes relating to DeVeau by Progressive Select agreeing to buy back the Policy, subject to all terms and conditions of this Agreement; and

Error! Unknown document property name.
Error! Unknown document property name.

WHEREAS, the Parties agree and understand that creditors and parties-in-interest therein will have the opportunity to appear and be heard in the Bankruptcy Court on the question of whether the approval of this Agreement is in the best interest of the Estate;

NOW, THEREFORE, intending to be legally bound, the Parties agree as follows:

## I.    DEFINITIONS

As used in this Agreement, the following terms have the meanings set forth below.

1.    "Approval Date" means the date on which the Approval Order (as defined herein) becomes a Final Order.

2.    "Approval Order" means an order, in substantially the form attached hereto as Exhibit 1, with only such modifications as are mutually acceptable to the Parties, entered by the Bankruptcy Court under Bankruptcy Code sections 105 and 363 and Rules 6004 and 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), as well as any other provision of the Bankruptcy Code or Bankruptcy Rules as may be appropriate, which Order shall: (a) authorize the Trustee to undertake the transactions contemplated by this Agreement; (b) authorize the sale of the Policy by the Trustee free and clear of any and all interests under section 363(f) of the Bankruptcy Code; (c) find that Progressive Select is a good-faith purchaser of the Policy and, as such, is entitled to all protections provided to a good-faith purchaser under Bankruptcy Code section 363(m); (d) provide for the Injunction (as defined herein); (e) find that the releases in the Agreement and the policy buyback contemplated hereunder comply with the Bankruptcy Code and applicable non-bankruptcy law; (f) approve the Agreement and find that the consideration exchanged constitutes a fair and reasonable settlement of the Parties' respective rights and obligations; (g) rule that, upon the Approval Date, the Policy shall be terminated and of no force and effect [and shall be deemed exhausted in respect of all coverages thereunder]; (h)

Error! Unknown document property name.
Error! Unknown document property name.

find that the Agreement is binding on any trustee for DeVeau and the Estate (as defined herein); and (i) reimpose the automatic stay under section 362 of the Bankruptcy Code pending the Approval Order becoming a Final Order, and order that the Coverage Case, the Trustee's Monroe County Case (including without limitation the Cross-Claims asserted therein), and any other action seeking rulings as to insurance coverage or other matters that are property of the Estate, be stayed. The Trustee shall use his best efforts to obtain an order in the form attached hereto as Exhibit 1. The Trustee further agrees to work cooperatively with Progressive Select to the extent modifications to the Order are necessary.

3.      "Bankruptcy Case" means case no. 15-13300-FJB commenced in the Bankruptcy Court by DeVeau under chapter 7 of the Bankruptcy Code.

4.      "Bankruptcy Code" means Title 11 and the applicable provisions of Titles 18 and 28 of the United States Code, as amended from time to time.

5.      "Bankruptcy Court" means the United States Bankruptcy Court for the District of Massachusetts (Eastern Division).

6.      "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure.

7.      "Claim" means any and all past, present, or future, known or unknown, foreseen or unforeseen, direct or indirect, fixed or contingent, matured or un-matured, liquidated or unliquidated, claims (including "claim" as defined in Section 101(5) of the Bankruptcy Code), proofs of claim, causes of actions, cross-claims, counterclaims, liabilities, rights, demands (including letter demands, notices, or inquiries from any person or government agency), penalties, assessments, damages, requests, suits, lawsuits, costs (including attorneys' fees and expenses), interest of any kind, actions, administrative proceedings, criminal proceedings, or orders, of whatever nature, character, type, or description, whenever and however occurring, whether at law or in equity, and whether sounding in

**Error! Unknown document property name.**
**Error! Unknown document property name.**

tort or contract, or any statutory, regulatory or common law claim or remedy of any type including, without limitation: (a) any claim seeking any type of relief, including compensatory, consequential, exemplary or punitive damages, rescission, or declaratory or injunctive relief; (b) any claim on account of alleged bad faith; failure to act in good faith; violation of any duty of good faith and fair dealing; direct action claim, violation of any unfair claims settlement practices act or similar statute, regulation or code; and any unfair claims handling or settlement practices, fraud, conspiracy, concerted action, or other type of alleged misconduct; and (c) any claim for any other act or omission of an insurer of any type for which a claimant might seek relief.

8.      "DeVeau Policy Rights" shall have the meaning set forth in Section 2.1.

9.      "Effective Date" shall have the meaning set forth in Section 2.2.

10.     "Estate" means the bankruptcy estate created under section 541 of the Bankruptcy Code for DeVeau as a result of the filing of the Bankruptcy Case.

11.     "Execution Date" means the first day on which all Parties have signed this Agreement.

12.     "Final Order" means an order or judgment (including any modification or amendment thereof) that remains in effect and has not been reversed, vacated or stayed, and as to which the time to appeal or seek review, rehearing, or writ of certiorari has expired and as to which no appeal or petition for review, reconsideration, rehearing, or certiorari has been taken or, if taken, has been resolved and no longer remains pending.

13.     "Including" means including without limitation.

14.     "Injunction" means a permanent injunction pursuant to sections 105(a) and 363(f) of the Bankruptcy Code to become effective upon the approval by the Bankruptcy Court permanently enjoining the prosecution, continuation, or commencement of any Claim that any

Error! Unknown document property name.
Error! Unknown document property name.

Person holds or asserts, or may in the future hold or assert, against Progressive, arising out of, based upon, relating to, attributable to, in connection with and/or in any way related to or derived from, directly or indirectly, the Policy (including the proceeds or coverage thereunder), or any Claim that may be covered thereunder, whether based in contract, tort or otherwise, as well as any bad faith Claim or extra-contractual liability Claim. The Injunction shall permanently enjoin all Claims released under Section 4 of this Agreement.

15.     "Insurance Coverage Claim" means any Claim seeking defense or indemnity or any other benefit under or relating to the Policy, including any Claim as to the alleged existence or applicable limits of the Policy.

16.     "Interests" means all liens, claims (including Claims), encumbrances, interests, demands and other rights of any nature, whether at law or in equity.

17.     "Motion" means the motion, and any exhibits attached thereto, to be filed by the Trustee with the Bankruptcy Court for approval of this Agreement and the sale of the Policy and entry of the Approval Order, which Motion shall be in form and substance acceptable to Progressive Select.

18.     "Payment" shall have the meaning set forth in Section 2.2.

19.     "Person" means and includes a natural person or persons, a group of natural persons acting as individuals, a group of natural individuals acting in a collegial capacity (e.g., as a committee, board of directors, etc.), a corporation, partnership, limited liability company or limited partnership, a proprietorship, joint venture, trust, legal representative, or any other unincorporated association, business organization or enterprise, any government entity, and any successor in interest, heir, executor, administrator, trustee, trustee in bankruptcy, assignee, or receiver of any person or entity.

**Error! Unknown document property name.**
**Error! Unknown document property name.**

20. "Petition Date" means the date on which DeVeau filed the Bankruptcy Case; i.e., August 24, 2015.

21. "Policy" means (a) Progressive Select policy no. 74082543, identifying DeVeau as the named insured; (b) any other known or unknown liability insurance policy, contract, or coverage of any nature, type or kind, issued or allegedly issued by Progressive under which DeVeau is, allegedly may be, or claims to be an insured, named insured, additional insured, additional named insured, or otherwise entitled to any insurance coverage or benefits; (c) any binders, cover notes, and endorsements to any policy referenced in (a) or (b); any rights of the Estate, DeVeau, or anyone claiming through the Estate or DeVeau, which Claims arise directly or indirectly from (a), (b) or (c) above. With respect to any policy issued to Persons other than DeVeau under which DeVeau has or claims to have the right to insurance coverage, the term "Policy" means only the insurance coverage and indemnity rights afforded by such policy to DeVeau.

22. "Progressive" means Progressive Select Insurance Company (as defined herein), Progressive Direct Insurance Company, Progressive Casualty Insurance Company, and any other underwriting company of the Progressive Group of Insurance Companies, and each of their past, present and future directors, officers, shareholders, employees, agents, partners, representatives, attorneys, parents, affiliates, subsidiaries, divisions, joint ventures, predecessors, successors, beneficiaries, and assigns, acting in their respective capacities as such. As used herein, "Progressive" includes Anthony Johnson and Robin Gadbilao.

23. "Progressive Select" means Progressive Select Insurance Company, and each of its respective past, present, and future directors, officers, shareholders, employees, agents,

Error! Unknown document property name.
Error! Unknown document property name.

partners, representatives, attorneys, parents, affiliates, subsidiaries, divisions, joint ventures, predecessors, successors, beneficiaries, and assigns; acting in their respective capacities as such.

References to this Agreement and other related documents shall be deemed to include all subsequent amendments and other modifications thereto.

## II.    SALE OF POLICY AND PAYMENT OF SETTLEMENT AMOUNT

2.1    Subject to all of the terms and conditions of this Agreement and contingent upon, without limitation, the approval of the Bankruptcy Court, in full and final settlement of all responsibilities under and arising out of the Policy, and in consideration of the conveyance of the Policy to Progressive Select, pursuant to sections 363(b) and 363(f) of the Bankruptcy Code, Progressive Select shall purchase from the Estate, and the Estate shall sell, convey, transfer, and deliver to Progressive Select upon the Effective Date all right, title, and interest in: (i) the Policy, and any and all rights under the Policy, free and clear of any and all Interests of any and all Persons; and (ii) any Progressive Select policy issued to DeVeau or under which DeVeau is asserted to be an insured and any policy issued by any other Progressive entity to DeVeau or under which DeVeau is asserted to be an insured, known or unknown, free and clear of all liens, encumbrances, Claims, or other Interests of any person, including, without limitation, any breach of contract, breach of the implied covenant of good faith and fair dealing, bad faith or extra-contractual liability Claim that could arise, directly or indirectly, from any such policy, including any rights of the Estate, DeVeau, or anyone claiming through the Estate or DeVeau. (The Policy and all such rights and Interests referenced in this Section 2.1, whether or not alleged or asserted, are referred to herein as the "DeVeau Policy Rights.")  Progressive Select shall be found to be a good-faith purchaser of the Policy for purposes of section 363(m) of the Bankruptcy Code. Such finding shall be included in the Approval Order.

**Error! Unknown document property name.**
**Error! Unknown document property name.**

2.2     Subject to all of the terms of this Agreement, in full and final settlement of all responsibilities under and arising out of the Policy, and in consideration of the sale of the Policy to Progressive Select free and clear of any and all Interests of any and all Persons, within thirty (30) calendar days of (i) the exchange of fully executed settlement documentation and any and all instruments consistent with each of the points enumerated herein and (ii) all orders, injunctions and the discharge referenced herein having been entered and becoming Final Orders (the date described in (i) and (ii) being the "Effective Date"), Progressive Select shall pay to the Estate through the Trustee the total sum of Eight Hundred Twenty-Five Thousand Dollars ($825,000.00) (the "Payment"). All amounts paid pursuant to this clause shall be paid for the resolution of Claims against Progressive Select and fulfillment of the obligations of the Trustee set forth in this Agreement. The Payment shall be made by electronic funds transfer in accordance with written instructions to be provided to Progressive Select by the Trustee's counsel. The Payment shall become part of the Estate, and its use and disbursement for administrative costs or creditor distribution shall be in accordance with the Bankruptcy Code and, where required by the Bankruptcy Code or Bankruptcy Rules, subject to the approval of the Bankruptcy Court. In a manner consistent with his fiduciary duties, the Trustee shall obtain, as part of the Approval Order, a provision that Rierson, being the only unsecured creditor of the Estate, shall receive, in connection with her proof of claim, without any finding or admission of liability, the settlement proceeds in accordance with the distribution scheme established by the United States Bankruptcy Code. Based upon his current estimates, the Trustee has determined that administrative expenses in this case currently total approximately $380,000:

| | |
|---|---|
| Donald R. Lassman, Esq. (Trustee) | $44,500.00 |
| Partridge Snow and Hahn LLP (Counsel to Trustee) | $235,000.00 |
| Morgan & Morgan (Special Counsel to Trustee) | $100,000.00 |
| TOTAL | $369,500.00 |

Error! Unknown document property name.
Error! Unknown document property name.

Pursuant to the settlement agreement, approximately $445,000 would remain net of these expenses for distribution on account of unsecured creditor claims.

2.3     The Parties agree that: (a) the Payment is the total amount Progressive Select is obligated to pay on account of any and all Claims of any kind made under, related to, based upon, in connection with, attributable to, or arising from the Policy, the DeVeau Policy Rights, or the issuance of the Policy; (b) under no circumstance shall Progressive Select ever be obligated to make any additional payments to DeVeau, the Estate, or any other Person in connection with the Policy, any Claim released hereunder, or directly or indirectly related to or arising out of Progressive Select having insured DeVeau; (c) all alleged limits of liability of the Policy shall be deemed exhausted; (d) the Payment is the full purchase price for the sale of the Policy and, upon the Effective Date, Progressive Select shall be deemed to own the Policy free and clear of any and all Interests of any Person; (e) subject to the terms of this Agreement and the occurrence of the Effective Date, Progressive Select shall have no further obligation to DeVeau, the Estate, or any other Person under the Policy for any Claim; and (f) the Payment is at least equal to the fair value of the Policy, (which Progressive Select asserts is zero since it maintains that there is no liability coverage for the Personal Injury Action).

2.4     This Agreement, including Progressive Select's obligation to make the Payment, is conditioned on the entry of a discharge for DeVeau under section 727 of the Bankruptcy Code and the objections by Rierson to discharge and dischargeability, including by adversary proceeding, being dismissed with prejudice or otherwise terminated with prejudice. This Agreement, including Progressive Select's obligation to make the Payment, is further conditioned on the Bankruptcy Court finding that the Cross-Claims asserted by Rierson against Progressive and present or former representatives of any Progressive entity (including, but not

**Error! Unknown document property name.**
**Error! Unknown document property name.**

limited to, Anthony Johnson and Robin Gadbilao) in the Trustee's Monroe County Case, are property of the Estate released by the Trustee and enjoined as part of this Agreement. The Trustee shall not pursue any challenge to DeVeau's discharge, as consistent with the Trustee's decision not to challenge DeVeau's discharge previously. The Trustee is now time-barred from challenging DeVeau's discharge, and, in any event, is not opposed to entry of the discharge order. This Agreement, including Progressive Select's obligation to make the Payment, is also conditioned on the issuance by the Bankruptcy Court of the Injunction, as well as the Trustee's agreement to dismiss with prejudice all Claims asserted by the Trustee in:

      a.      the Coverage Case;

      b.      the Trustee's Monroe County Case;

      c.      the Fraudulent Transfer Case; and

      d.      any other action against Progressive that has been brought or is controlled by the Trustee of which the Trustee becomes aware (2.4a.–d. collectively, the "Pending Actions").

2.5      Effective immediately upon the Effective Date, and without any further action by any of the Parties, all of the Trustee's rights and all Interests under and with respect to the Policy shall be permanently and irrevocably extinguished.

### III.      BANKRUPTCY-RELATED OBLIGATIONS

3.1      Within five (5) business days after the Execution Date and in no event later than October 7, 2019, the Trustee shall file the Motion pursuant to Bankruptcy Code sections 105 and 363 and Bankruptcy Rules 6004 and 9019. The Trustee shall represent to the Bankruptcy Court in the Motion that he and/or his professionals have investigated and evaluated all Claims (in tort, contract, statutory or otherwise) included in such actions brought or prosecuted by the Trustee in connection with or relating to the Bankruptcy Case (including, without limitation, all Claims

**Error! Unknown document property name.**
**Error! Unknown document property name.**

asserted in the Trustee's Monroe County Case) and, in light of this current evaluation, in his sound business judgment, has concluded that, given the difficulty of prevailing on each of the various claims, resolution of these disputes and settlement of these matters is in the best interest of the Estate in order to prevent further litigation, fees and expenses, and that the further pursuit of these Claims against Progressive would be of little or no benefit to the Estate. The Trustee shall request that the hearing date be set for no more than thirty (30) calendar days after the filing of the Approval Motion. The Trustee shall use his best efforts to obtain entry of the Approval Order as a Final Order.

3.2     The Trustee shall, promptly upon filing the Motion, serve a copy of the Motion, together with any notice of objection deadline and/or hearing issued by the Bankruptcy Court, on: (a) each Person known to have a Claim against DeVeau or the Estate through participating in the Bankruptcy Case (and to his, her, or its counsel of record if known to the Trustee); (b) any and all Persons allegedly entitled to insurance coverage under the Policy and whose contact information is provided to the Trustee by Progressive on or before the Execution Date; (c) all other Persons who have filed proofs of claim in the Bankruptcy Case; (d) all co-defendants in prepetition litigation brought against DeVeau (including, without limitation, Latrice Pla and Abraham Baker) and whose contact information is provided to the Trustee by Progressive on or before the Execution Date; and (e) all other parties in interest pursuant to Bankruptcy Rule 2002 and any other applicable local rules, including any Person who filed a notice of appearance and demand for service of papers in the Bankruptcy Case. As soon as reasonably practicable after filing the Motion, the Trustee shall file in the Bankruptcy Case a certificate of the service provided by mail or otherwise.

**Error! Unknown document property name.**
**Error! Unknown document property name.**

3.3     If the Approval Order or any other order of the Bankruptcy Court relating to this Agreement shall be appealed by any Person (or a petition for certiorari or other review or motion for rehearing or re-argument shall be filed with respect thereto), the Trustee agrees to take all reasonable and appropriate steps to defend against such appeal, petition, other request for review, or motion in accordance with and subject to his reasonable business judgment; provided, however, that nothing herein shall preclude the Parties from consummating the transactions contemplated herein if the Approval Order shall have been entered and has not been stayed and Progressive Select, in its sole discretion, waives in writing the requirement that the Approval Order or other order be a Final Order.

3.4     Each of the Parties further agrees not to take any appeal from, or to seek to reopen, reargue, obtain reconsideration of, or otherwise contest or challenge in any way, directly or indirectly, any order provided for by, or executed or entered pursuant to, or in implementation of, this Agreement (including, without limitation, the Approval Order), except to the extent that any such order shall be inconsistent with the terms of this Agreement.

3.5     The Trustee agrees to reasonably cooperate with Progressive Select and its representatives in connection with the Approval Order and the Bankruptcy Case. Such reasonable cooperation shall include consulting with Progressive Select at its request (so long as such request is not unreasonable) concerning the status of the Bankruptcy Case, including the status of the Motion or any objections to the Motion, and providing Progressive Select with copies of requested pleadings, notices, proposed orders and other non-privileged documents relating to the Bankruptcy Case, the Motion or the service of the Motion as soon as reasonably practicable and in any event no later than when such documents are provided to holders of Claims or their counsel.

**Error! Unknown document property name.**
**Error! Unknown document property name.**

3.6     Contemporaneous with the filing of the Motion by the Trustee, the Trustee shall move that the Bankruptcy Court stay or reimpose the automatic stay as to: (i) the Personal Injury Action and any other action brought by Rierson against DeVeau; (ii) the Coverage Case; (iii) the Trustee's Monroe County Case (including, without limitation, the Cross-Claims asserted therein); (iv) the Fraudulent Transfer Case; and any other action seeking declarations or other rulings as to insurance coverage and other matters that are property of the Estate or controlled by the Trustee. The Trustee shall expeditiously prosecute this motion to stay or reimpose the automatic stay. Within ten (10) calendar days of the Effective Date, the Trustee shall move to dismiss with prejudice all Claims asserted by the Trustee in the Pending Actions and any other actions against Progressive that have been brought or are controlled by the Trustee, and shall move to dismiss the Personal Injury Case. Upon the Effective Date, the Trustee shall seek to dismiss with prejudice the Pending Actions.

3.7     The Parties shall not submit to the Bankruptcy Court for approval any filing, motion, adversary proceeding, or other request the approval of which could conflict with, supersede, abrogate, nullify, modify or restrict the terms of this Agreement and the rights of the Parties hereunder, or in any way prevent or interfere with the consummation or performance of the transactions contemplated by this Agreement, including any transaction that is contemplated by or approved pursuant to the Approval Order.

3.8     In the event that, at any time after the Approval Date and prior to the Effective Date, any Person asserts any Claim against Progressive arising out of or related to any matter released by this Agreement, the Trustee shall promptly seek an order from the Bankruptcy Court enjoining such Claim, provided that Progressive Select agrees to pay the reasonable fees and

Error! Unknown document property name.
Error! Unknown document property name.

expenses to be incurred in doing so. Progressive Select agrees that any such amounts it pays under this Paragraph 3.8 shall not reduce the Payment.

## IV.   RELEASE

4.1     Effective upon the Effective Date, and without any further action of the Parties: the Trustee, on behalf of himself and the Estate, and Progressive Select, hereby fully, finally, and completely remise, release, acquit, and forever discharge one another from any and all Claims, whether actual or alleged, known or unknown, accrued or unaccrued, existing or potential, suspected or unsuspected, whether based in contract, tort, common law, statute, or otherwise, with respect to, relating to, or in any way arising out of the Bankruptcy Case, the Pending Actions, the Policy or the DeVeau Policy Rights or relating to DeVeau, including, but not limited to, any past, present or future claim or administrative charge that the Trustee has asserted or could assert against Progressive or any of their officers, directors, agents, attorneys, employees or representatives relating to or arising out of the DeVeau Policy Rights, including, without limitation, claims for fraudulent transfer, unjust enrichment, breach of the implied covenant of good faith and fair dealing, breach of contract, fraud, deceit, Lanham Act liability, rescission of release, gross negligence, conspiracy, unfair or improper claims handling or settlement practices, any claim based on allegations in any civil remedy notice of insurer violations filed by the Trustee, violation of any law, regulation, code, or statute, bad faith, extra-contractual liability or any other conduct. The release of Progressive under Section 4.1 of this Agreement includes, but shall not be limited to, any and all Claims for coverage with respect to, relating to, or in any way arising out of the Policy or the DeVeau Policy Rights for property damage, bodily injury, personal injury, advertising injury, or any other form of loss potentially covered under the Policy. In addition, the Trustee, on behalf of himself and the Estate, hereby withdraws any and all requests, demands, or tenders for defense or indemnity

15

previously submitted to Progressive under the Policy and further surrenders, relinquishes, and releases any further right to tender or present any Claims whatsoever to Progressive under the Policy or pursuant to any of the DeVeau Policy Rights. Furthermore, by virtue of the foregoing releases, Progressive shall have no duty to defend or indemnify the Trustee or the Estate with respect to any past, present, or future Claim, nor shall Progressive have any other duty or obligation whatsoever to any other Person with respect to any and all Claims with respect to, relating to, or in any way arising out of, the DeVeau Policy Rights.

4.2     The releases set forth in Section 4.1 of this Agreement are not intended to and shall not extend to or otherwise release or discharge any rights, defenses, privileges, benefits, duties, or obligations of any of the Parties by reason of, or otherwise arising under, this Agreement.

4.3     The Parties acknowledge that there may be changes in the law with respect to interpretation of coverage under the Policy or otherwise, or the Parties may hereafter discover facts different from, or in addition to, those which they now believe to be true with respect to any and all of the Claims herein released. Nevertheless, the Parties hereby agree that the releases set forth herein shall be and remain effective in all respects, notwithstanding any changes in the law or the discovery of such additional or different facts. The Parties irrevocably and knowingly agree that the releases contained in Section 4.1 of this Agreement include a full and complete and irrevocable release and discharge from all known and unknown rights, Claims and Interests with respect to, relating to, or in any way arising out of the Policy or the DeVeau Policy Rights.

4.4     In furtherance of their express intent to fully, finally, and irrevocably release and discharge one another from all Claims, known and unknown, from the beginning of time until the end of time to the extent set forth in this Section 4 of this Agreement, the Parties expressly waive any and all rights they may have under any contract, statute, code, regulation, ordinance, or the

**Error! Unknown document property name.**
**Error! Unknown document property name.**

common law which may limit or restrict the effect of a general release as to Claims with respect to, relating to, or in any way arising out of the Bankruptcy Case, the Pending Actions, the Policy, the DeVeau Policy Rights, or otherwise relating to DeVeau.

4.5     Subject to the other provisions of this Agreement, to the extent that the releases set forth in this Section 4 of this Agreement run in favor of any Persons who are not signatories hereto, this Agreement is hereby declared to be made in and for their respective benefits and uses.

4.6     The Trustee, on behalf of himself and the Estate, warrants and represents that none of the Claims herein released has been, or will be, assigned or transferred, in whole or in part, to any Person other than Progressive Select.

4.7     The Trustee, on behalf of himself and the Estate, represents, warrants, and agrees that he will not in any way assist any Person in the establishment of any Claim against Progressive that arises out of, results from, or in any way relates to the Claims released under this Agreement. The Trustee shall cooperate in establishing that any alleged or contingent Claims by Rierson against Progressive or any of their officers, directors, agents, attorneys, employees or representatives asserted in the Trustee's Monroe County Case (including, without limitation, those for fraud, conspiracy, Lanham Act violations, gross negligence, or bad faith) are property of the estate, and shall request from the Bankruptcy Court in the Motion and obtain an order finding that these Claims are property of the Estate and directing that these Claims be dismissed with prejudice. The Trustee shall further cooperate with Progressive Select in establishing that any Claim by Rierson directly or indirectly based on harm to DeVeau is property of the estate that is being released under this Agreement and must be dismissed with prejudice.

Error! Unknown document property name.
Error! Unknown document property name.

## V.    REPRESENTATIONS AND WARRANTIES OF THE PARTIES

5.1    Each of the Parties separately represents and warrants as follows:

(a)    Subject to the entry of the Approval Order, it has the requisite power and authority to enter into this Agreement and to perform the obligations imposed on it by this Agreement;

(b)    Subject to the entry of the Approval Order, the execution and delivery of, and the performance of the obligations contemplated by, this Agreement have been approved by duly authorized representatives of the Party, and by all other necessary actions of the Party;

(c)    Each Party has expressly authorized its undersigned representative to execute this Agreement on the Party's behalf as its duly authorized agent;

(d)    This Agreement has been thoroughly negotiated and analyzed by each Party's counsel and has been executed and delivered in good faith, pursuant to arm's length negotiations, and for valuable consideration to resolve litigation without further expense; and

(e)    Each Party shall use its best efforts to seek entry of the Approval Order as attached in Exhibit 1.

## VI.    MISCELLANEOUS PROVISIONS

6.1    Termination Rights. Should any provision in this Agreement not be approved or enforced pursuant to its terms, then the entire Agreement shall be null and of no effect, and the Trustee and Progressive shall be returned to their respective positions prior to entry into this Agreement. In that event, the Trustee and Progressive shall have all of the rights, defenses and obligations that they would have had absent this Agreement, except that statutes of limitations or repose, or other time-related limitations, shall be deemed to have been tolled for the period from

**Error! Unknown document property name.**
**Error! Unknown document property name.**

the Execution Date through the date that the Agreement becomes null and void pursuant to the terms of this Agreement.

6.2     Amendments. Neither this Agreement nor any term set forth herein may be changed, waived, discharged, or terminated except by a writing signed by the Parties (or their successors or assigns) and approved by the Bankruptcy Court.

6.3     No Precedential Value. The settlement reflected in this Agreement shall be without precedential value, and it is not intended to be, nor shall it be construed as, an interpretation of any insurance policy. It shall not be used as evidence, or in any other manner, in any court or other dispute-resolution proceeding, to create, prove, or interpret the obligations of Progressive under any insurance policy issued to DeVeau or to any other Person, provided, however, that, notwithstanding this provision, this Agreement may be used by Progressive as evidence in any defense of Progressive concerning any obligation arising under the Policy or the DeVeau Policy Rights.

6.4     Agreement Voluntarily Entered Into By Each Of The Parties. This Agreement is executed voluntarily by each of the Parties without any duress or undue influence on the part of, or on behalf of, any of them. The Parties represent and warrant to each other that they have read and fully understand each of the provisions of this Agreement and have relied on the advice and representations of competent legal counsel of their own choosing.

6.5     Interpretation. This Agreement has been negotiated at arm's length and between and among Persons sophisticated and knowledgeable in the matters dealt with in this Agreement. In addition, this Agreement was drafted by experienced and knowledgeable legal counsel for each of the Parties. Accordingly, no Party shall be entitled to have any provisions of

the Agreement construed against the other Party in accordance with any rule of law, legal decision or doctrine.

6.6     No Admission of Liability. The Parties agree that this Agreement is the result of a compromise of disputed issues, and that the execution and delivery of this Agreement by any of the Parties shall not constitute or be construed as an admission, confession or acknowledgment of any liability or coverage, a course of performance, or wrongdoing on the part of any of them. The Parties acknowledge that this Agreement is not, and cannot be construed as, an admission by Progressive that any defense, indemnity, or other coverage obligation exists under the Policy or the DeVeau Policy Rights, or that Progressive has any other obligation of any nature whatsoever with respect to the Policy, the DeVeau Policy Rights or DeVeau. By entering into this Agreement, neither the Trustee (on behalf of himself and the Estate) nor Progressive has waived nor will be deemed to have waived any right, obligation, privilege, defense, or position it may have asserted or might assert in connection with any Claim, matter, Person, or insurance policy outside the scope of this Agreement. Given the difficulty of prevailing on each of the various Claims, the Trustee, in his sound business judgment, has concluded that resolution of these disputes and settlement of these matters is in the best interest of the Estate in order to prevent further litigation, fees and expenses. The Trustee acknowledges Progressive Select's representation that, from its perspective, the Payment represents only avoidance of further trial and litigation expense. The Trustee stipulates that Progressive retains as to any parties other than the Trustee and the Estate, all potential defenses to coverage and to any other liability of any kind. Progressive Select stipulates that the Trustee retains all potential defenses to liability of any kind as to any parties other than Progressive Select.

**Error! Unknown document property name.**
**Error! Unknown document property name.**

6.7    Entire And Integrated Agreement. This Agreement is intended by the Parties as a final expression of their agreement and is intended to be a complete and exclusive statement of the agreement and understanding of the Parties with respect to the subject matters contained herein. This Agreement supersedes any and all prior promises, representations, warranties, agreements, understandings, and undertakings between or among the Parties with respect to such subject matters, and there are no promises, representations, warranties, agreements, understandings, or undertakings with respect to such subject matters other than those set forth or referred to herein.

6.8    No Third-Party Beneficiaries. Except as set forth in section 4, nothing in this Agreement is intended or shall be construed to give any Person, other than Progressive and the Trustee (on behalf of himself and the Estate) and their respective successors and permitted assigns, any legal or equitable right, remedy, or Claim under or in respect to this Agreement or any provisions contained herein, this Agreement and any conditions and provisions hereof being and intended to be for the sole and exclusive benefit of Progressive and the Trustee (on behalf of himself and the Estate) as well as each of their successors and permitted assigns. Notwithstanding the foregoing, this Agreement shall be binding on DeVeau and any successor trustee appointed to administer the Estate. Neither this Agreement nor the rights and obligations set forth herein shall be assigned without the prior written consent of the other Party, except that this Section shall not prohibit any assignment by Progressive Select (a) made by merger, consolidation, or operation of law or (b) to a Person who succeeds to all or substantially all of Progressive Select's assets.

6.9    Choice of Law. This Agreement shall be governed by and construed in accordance with the substantive law of the Commonwealth of Massachusetts and, to the extent

**Error! Unknown document property name.**
**Error! Unknown document property name.**

applicable, the United States Bankruptcy Code, and shall have the force and effect of an instrument executed and delivered under seal under the law of the Commonwealth of Massachusetts. The Bankruptcy Court shall retain exclusive jurisdiction to resolve any dispute arising under or in connection with this Agreement, without prejudice to the rights of the Parties to seek to enforce the rights and protections afforded by this Agreement in any other court.

6.10 <u>Notice.</u> Any notice or request required or desired to be given pursuant to this Agreement shall be sufficient if made in writing and sent by first class mail, postage prepaid, to the Parties at the addresses set forth below or to such other Persons as any of them may designate in writing from time to time:

(a)     As to Progressive Select:

Robert B. Millner, Esq.
Dentons US LLP
233 South Wacker Drive, Suite 5900
Chicago, IL  60606-6361
Tel.: (312) 876-7994
Fax: (312) 876-7934
robert.millner@dentons.com

and

Philip A. O'Connell, Jr.
Dentons US LLP
One Beacon Street, Suite 25300
Boston, MA  02108-3107
Tel.: (617) 235-6802
Fax: (617) 235-6899
philip.oconnelljr.@dentons.com

(b)     As to the Trustee:

Alex F. Mattera
Partridge Snow & Hahn LLP
30 Federal Street
Boston, MA  02110
Tel.: (857) 214-3118

Error! Unknown document property name.
Error! Unknown document property name.

Fax: (617) 292-7910
amattera@psh.com

6.11     Headings. The section titles, captions, and headings contained in this Agreement are inserted as a matter of convenience and for reference, and shall in no way be construed to define, limit, or extend the scope of this Agreement or the effect of any of its provisions.

6.12     Recitals. The recitals set forth at the beginning of this Agreement shall not be admissible to prove the truth of the matters asserted therein in any action or proceeding involving any of the Parties (other than an action or proceeding brought to enforce the terms of this Agreement), nor do any of the Parties intend such recitals to constitute admissions of fact by any of them.

6.13     Agreement Inadmissible. Any evidence of the terms or negotiations or discussions associated with this Agreement shall be inadmissible in any action or proceeding for purposes of establishing any rights, duties or obligations of the Parties, except in: (a) an action or proceeding to enforce the terms of this Agreement; (b) proceedings to secure or implement the Agreement or the Approval Order; or (c) any possible action or proceeding between Progressive and any of its reinsurers with respect to the Policy. Except as set forth herein, this Agreement shall not be used as evidence or in any other manner, in any court or dispute-resolution proceeding, to create, prove, or interpret the Parties' rights or obligations to each other or to any other Person.

6.14     Additional Necessary Documents. The Parties, and each of them, agree to execute such additional documents as may be reasonably required in order to carry out the purpose and intent of this Agreement, or to evidence anything contained herein.

6.15     Execution in Counterparts. This Agreement may be signed in multiple counterparts and the separate signature pages executed by the Parties may be combined to create

23

a document binding on all of the Parties and together shall constitute one and the same instrument. Facsimile or electronically scanned signatures shall have the same force and effect as an original signature.

*[The remainder of this page was intentionally left blank]*

**Error! Unknown document property name.**
**Error! Unknown document property name.**

**IN WITNESS WHEREOF,** the Parties have executed this Agreement as of the date set

forth opposite the respective signatures below.

Dated: 10/8/19

By: _____ Trustee

Name: Donald Lassman
Title: Duly Appointed Trustee of the Bankruptcy
Estate of David DeVeau

Dated: _____

Progressive Select Insurance Company

By: _____

Name: _____

Title: _____

25

**Error! Unknown document property name.**
**Error! Unknown document property name.**

**IN WITNESS WHEREOF,** the Parties have executed this Agreement as of the date set forth opposite the respective signatures below.

Dated: _____

By: _____

Name: Donald Lassman
Title: Duly Appointed Trustee of the Bankruptcy
Estate of David DeVeau

Dated: ___October 8, 2019___

Progressive Select Insurance Company

By: _____
Name: _Raymond S. Ling_
Title: _Asst VP_

26