UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

| In re<br><br>DAVID DEVEAU,<br><br>                          Debtor | Chapter 7<br>Case No. 15-13300-FJB |
|---|---|

**MEMORANDUM OF DECISION ON**
**MOTION OF TRUSTEE TO APPROVE COMPROMISE, APPROVE SALE, AND ISSUE INJUNCTION**

The matter before the Court is the Trustee's Motion to Approve Compromise, Approve Sale, and Issue Injunction [doc. #300]. By this motion, Donald Lassman ("the Trustee"), as trustee in the chapter 7 case of David F. DeVeau ("DeVeau" and "the Debtor"), seeks (i) approval under Fed. R. Bankr. P. 9019 of a compromise that he has reached with Progressive Select Insurance Company ("Progressive") regarding coverage obligations under a Progressive insurance policy that DeVeau, the Trustee, and creditor Ashly Rierson have sought to establish against Progressive, (ii) as a necessary element of the compromise, approval of the Trustee's sale of the insurance policy in question to Progressive free and clear of the interests and rights, if any, of Rierson, who asserts claims against both DeVeau and Progressive arising from injuries she sustained when she was struck by an automobile operated by DeVeau, and (iii) as a further necessary element of the compromise, a permanent injunction against Rierson's prosecution against Progressive of claims for coverage of her tort claims against DeVeau. Rierson opposes the motion.

The compromise agreement, to which only the Trustee and Progressive are parties, is intended to resolve a complex web of disputes among not only its parties but also Rierson and DeVeau. The relevant history is as follows.

On February 11, 2011, DeVeau, while operating his automobile in Florida, struck Rierson, resulting in devastating injuries to her. At the time, DeVeau maintained an automobile insurance policy through Progressive, but the policy apparently did not include coverage for bodily injury liability, which coverage is not mandatory in Florida. Rierson filed a personal injury action against DeVeau (the "Personal Injury Action") in a Florida state court. Progressive has provided DeVeau with defense counsel in that action, but only under a reservation of rights, Progressive having maintained all along that it had and has no duty to defend DeVeau because his policy did not include bodily injury coverage. The Personal Injury Action was tried to a jury in 2018, and the jury returned a verdict for DeVeau, but the jury verdict was later vacated by a state appeals court on the basis of prejudicial comments made by defense counsel during closing argument. The Personal Injury Action is now scheduled for retrial in February 2020.

There are two other actions arising from the accident and disputes with Progressive over coverage.  In 2011, Progressive commenced an action against DeVeau and Rierson in Florida state court in which it sought a declaration that it had no duty to defend or to indemnify DeVeau for any injuries sustained by Rierson (the "Coverage Action"). Rierson filed counterclaims against Progressive in the Coverage Action.

After DeVeau retained counsel in the Coverage Action, he initially defended that action by claiming that he had bodily injury coverage. In response, Progressive filed a motion under a Florida statute that permits an insurer that prevails in a coverage action to recover attorneys' fees and costs (the "Motion for Sanctions"). Such fees and costs are recoverable in equal amounts from the losing party and its attorney. On August 20, 2015, after DeVeau received the Motion for Sanctions, DeVeau and Progressive executed a stipulation and mutual release under which, among other things, DeVeau released and forever discharged Progressive of all liability arising from its offer of insurance to DeVeau, the issuance of the auto insurance policy to DeVeau, the initiation and maintenance of the declaratory

2

judgment action, and the duty to defend DeVeau in the personal injury case. That same day or the next, DeVeau filed in the Coverage Action a document withdrawing his amended answer and consenting to entry of a declaratory judgment in favor of Progressive to the effect that his "policy does not provide him with bodily injury liability insurance coverage for the motor vehicle accident in which he was involved on February 11, 2011 with [Rierson]."

Shortly thereafter, on August 24, 2015, the Debtor filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code, thereby commencing the bankruptcy case in which the present motion arises. In that case, Donald Lassman was duly appointed trustee, and he has served in that capacity continuously since.

When the Trustee examined the Debtor at his first meeting of creditors, he became convinced that the stipulation and mutual release could be avoided under applicable law. Accordingly, he commenced in this court an adversary proceeding to avoid or set aside the release as a fraudulent conveyance and also for unjust enrichment and breach of the implied covenant of good faith and fair dealing (the "Fraudulent Conveyance Action"). Since November 2016 and on motion of Progressive, that adversary proceeding has been stayed pending disposition of the litigation in Florida, especially the Coverage Action.

Also, in 2016, the Trustee commenced another action in Florida state court against Progressive, seeking relief on the basis (among others) that Progressive had engaged in bad faith in declining coverage to DeVeau (the "Bad Faith Action"). Rierson, too, as cross claimant, has asserted claims against Progressive and certain Progressive employees in the Bad Faith Action.

In addition, Rierson has filed two adversary proceedings in this bankruptcy case: (a) a complaint to determine that her claim against DeVeau is excepted from discharge by operation of 11 U.S.C. §523(a)(2)(A) ("the Dischargeability Action"); and (b) a separate complaint to deny DeVeau a discharge

3

for a variety of reasons under 11 U.S.C. §727(a) ("the Discharge Action"). At DeVeau's request, the Court has stayed both adversary proceeding pending determination of the litigation in Florida.

The Trustee has now negotiated a settlement agreement ("the Agreement") with Progressive. Its essential terms are as follows:

1. the Agreement's "Effective Date," a defined term, cannot occur until, among other things, the Discharge Action and the Dischargeability Action are finally resolved with prejudice in the Debtor's favor and the Debtor receives a discharge;

2. within 30 days of the Agreement's Effective Date, Progressive shall pay the estate $825,000 ("the Payment");

3. the Payment shall become property of the bankruptcy estate;

4. on the Effective Date and pursuant to 11 U.S.C. § 363(b), the Trustee shall transfer and sell to Progressive all right, title, and interest in "the Policy," another defined term meaning not only the specific Progressive policy in issue, but also any other Progressive policy DeVeau is or may claim to be insured, and "any rights of the Estate, DeVeau, or anyone claiming through the Estate or DeVeau, which Claims arise directly or indirectly from [such policies]";

5. on the Effective Date and pursuant to 11 U.S.C. § 363(f), the sale of the estate's rights in the insurance policy to Progressive shall be free and clear of all liens, encumbrances, claims, or other Interests of any person, including, without limitation, any breach of contract, breach of the implied covenant of good faith and fair dealing, bad faith or extracontractual liability Claim that could arise, directly or indirectly, from any such policy, including any rights of the Estate, DeVeau, or anyone claiming through the Estate or DeVeau, most notably Rierson;

6. Progressive shall receive a permanent injunction under 11 U.S.C. § 105(a) to give full effect to the § 363(f) feature of the sale, "to become effective upon the approval by the Bankruptcy Court," "permanently enjoining the prosecution, continuation, or commencement of any Claim that any Person," including especially Rierson, "holds or asserts, or may in the future hold or assert, against Progressive, arising out of, based upon, relating to, attributable to, in connection with and/or in any way related to or derived from, directly or indirectly, the Policy (including the proceeds or coverage thereunder), or any Claim that may be covered thereunder, whether based in contract, tort or otherwise, as well as any bad faith Claim or extra-contractual liability Claim[;]"

7. the Trustee shall cooperate in establishing that any alleged or contingent Claims by Rierson against Progressive or any of their officers, directors, agents, attorneys, employees or representatives asserted in the Trustee's Monroe County Case (including, without limitation, those for fraud, conspiracy, Lanham Act violations, gross negligence, or bad faith) are property of the estate, and shall request from the Bankruptcy Court in the Motion and obtain an order finding that these Claims are property of the Estate and directing that these Claims be dismissed with prejudice;

8. the Trustee shall dismiss with prejudice all pending litigation against Progressive; and

9. the parties will exchange mutual general releases.

4

Only Rierson has filed an objection to the Motion. She is the only creditor to have filed a proof of claim in the case, the claim being an unsecured claim for personal injury damages in the total amount of $25,630,054.00. However, no deadline has been set for the filing of proofs of claim; if assets are recovered for distribution, the court will establish and notify creditors of that deadline, and other claims may yet be filed. The Debtor has listed some 26 other creditors in his schedule of unsecured creditors; most of their claims are small (in comparison to Rierson's), but as to several, the Debtor indicated that the amount was unknown, and one, in favor of a workers compensation insurer, is in the amount of $2,001,619.70. The estate has also incurred chapter 7 administrative expenses in the nature of attorneys' fees totaling some $335,000.

Rierson objects to approval of the compromise on several grounds. First, she argues that the insurance policy is not now and has never been an asset of this chapter 7 estate because, she alleges, the Debtor released all claims against Progressive, including all rights under the policy, four days before he filed the petition; consequently, she argues, there is no asset for the Trustee to sell under § 363(b), and, as the sale is a necessary component of the compromise, there simply is no compromise to approve. Second, she argues that the settlement agreement and release should not be approved because the consideration paid to the estate is insufficient, given her assessment that the Personal Injury Action "is worth eight figures"; she further contends, in what is essentially the same argument, that the compromise falls short of the lowest point in the range of reasonableness, and that the Trustee's acceptance of $825,000 amounts to an abuse of his discretion. Third, Rierson argues that the Trustee's alleged concerns about liability to Progressive under Fla. Stat. § 57.105 for prosecution of a frivolous insurance coverage action are grossly misplaced. Fourth, Rierson contends that, as she is the only unsecured creditor in this bankruptcy case, and certainly the one most affected by the proposed compromise, her views on its advisability are entitled to consideration and weight in both the Trustee's

decision to enter into the compromise and the Court's decision to approve it, but the Trustee did not consult her at all in the matter.

Before determining whether the compromise should be approved, it is necessary to determine the three other parts of this motion. Unless the Trustee first prevails on these, there is simply no compromise to approve, the estate's rights under the Agreement being entirely contingent on the Trustee's obtaining three things for Progressive. They are (1) an order approving sale of the Policy (as defined) free and clear of any interest therein of any other party, including especially Rierson; (2) a further order determining that any alleged or contingent claims by Rierson against Progressive or any of their officers, directors, agents, attorneys, employees, or representatives asserted in the Trustee's Monroe County Case, a/k/a the Bad Faith Action (including, without limitation, those for fraud, conspiracy, Lanham Act violations, gross negligence, or bad faith) are property of the bankruptcy estate and directing that these be dismissed with prejudice; and (3) a permanent injunction against all Persons—including especially Rierson—consistent with the sixth of the enumerated terms above.

   a. **Sale**

The first of these three is an order approving the Trustee's sale of the Policy under § 363(b)(1) and further permitting, pursuant to § 363(f), that sale to be free and clear of any interest in the Policy of an entity other than the estate. Rierson opposes this part of the proposed settlement on the basis that the estate includes no interest of DeVeau in his policy, DeVeau having released all rights thereunder before his bankruptcy filing.

Under § 363(b)(1), a trustee in bankruptcy is authorized to sell, other than in the ordinary course of business, "property of the estate." 11 U.S.C. § 363(b)(1). The estate includes, in relevant part, "all legal or equitable interest of the debtor in property as of the commencement of the case," 11 U.S.C. § 541(a)(1), and certain interests in property that the trustee recovers, § 541(a)(3), or preserves for the benefit of the estate, § 541(a)(4), or that the estate acquires after the commencement of the case, §

6

541(a)(7). The "Policy" is a defined term that includes (i) Progressive policy no. 74082543 ("Policy no. 74082543"), identifying DeVeau as the named insured, including any binders, cover notes, and endorsements to this policy, and (ii) any rights of the Estate, DeVeau, or anyone claiming through the Estate or DeVeau, which Claims arise directly or indirectly from Policy No. 74082543. As the Agreement requires sale of both (i) and (ii) to Progressive, the Agreement fails if either (i) or (ii) is not an asset of the estate.

I begin with the rights that comprise part (i) of the definition. It is undisputed that before he filed his bankruptcy petition, DeVeau released and forever discharged Progressive of all liability arising from, among other things, its offer of insurance to DeVeau and the issuance of Policy No. 74082543 to DeVeau. It follows that DeVeau had no rights under that policy at the time of the filing, and none came into the estate via § 541(a)(1). Consequently, the Trustee cannot sell under § 363(b)(1) Policy No. 74082543; nor, because § 363(f) comes into play only for sales, may he employ § 363(f) to channel Rierson's claims against Progressive (whatever they may be) exclusively to the proceeds of the Agreement. Whatever the Agreement may be, it is not a sale of rights under Policy No. 74082543, the estate having no such rights to sell. It does not help that the Trustee may yet recover those rights because it is undisputed that he has not yet done so, and his rights of recovery, whatever they may be, are not the rights he seeks to recover.

The rights that comprise part (ii) of the definition are "any rights of the Estate, DeVeau, or anyone claiming through the Estate or DeVeau, which Claims arise directly or indirectly from Policy No. 74082543." Having concluded that the rights that comprise part (i) are not assets of the estate, the Agreement fails, and it is unnecessary to determine the extent to which the rights in part (ii) of the definition are property of the estate.

b. **Injunction**

The Agreement further requires that the Trustee obtain for Progressive a permanent injunction against all Persons, "to become effective upon the approval by the Bankruptcy Court," "permanently enjoining the prosecution, continuation, or commencement of any Claim that any Person holds or asserts, or may in the future hold or assert, against Progressive, arising out of, based upon, relating to, attributable to, in connection with and/or in any way related to or derived from, directly or indirectly, the Policy (including the proceeds or coverage thereunder), or any Claim that may be covered thereunder, whether based in contract, tort or otherwise, as well as any bad faith Claim or extra-contractual liability Claim." The Person against whom Progressive, and the Trustee for Progressive, seek this injunction is clearly Rierson (though the present motion does not identify her, or any person or entity, as the respondent with respect to whom this injunction is sought).

The Trustee's motion for an injunction is predicated on the Court's authorization of a sale free and clear of liens under § 363(f)—the theory is that § 363(f) channels the rights of interest holders exclusively to the proceeds of the sale, insulating the purchaser from liability on the sold and settled claims. The Court having determined that there is no sale here, much less one under § 363(f), it follows that there can be no injunction.

c. **Conditions and Asymmetry**

The Agreement is expressly conditioned on DeVeau's receipt of a discharge and dismissal with prejudice of the Discharge and Dischargeability Actions. Unless and until these events occur, Progressive would have no obligation under the Agreement to make the $825,000 payment to the estate, and the releases (in both directions) contemplated by the Agreement would not go into effect. On the other hand, the injunction that Progressive seeks would become effective immediately. The value of the Agreement to the estate consists entirely of the $825,000 payment to the estate and the release by Progressive of its claims against the estate. But DeVeau may not receive a discharge and may not prevail

8

in the Discharge and Dischargeability Actions (I express no opinion about the merits of those actions but only note that no one knows at this juncture how they will be resolved.); and the Trustee has no control over these matters. In short, the benefit to the estate is contingent and uncertain while the benefit to Progressive is certain and immediate.

In deciding whether to approve a compromise by a trustee of rights of the estate, the Court generally defers to the judgment of the trustee and may disturb it only where the compromise falls below the lowest point in the range of reasonableness. Here, the Trustee judgment on the advisability of the Agreement is based wholly on the cash and releases it would bring the estate; at the same time, however, he offers no defense of the unusually asymmetrical nature of this compromise. I cannot find that an agreement in which the trustee effectively gives up all rights in exchange for quite possibly no benefit at all falls above the lowest point in the range of reasonableness. In other words, I conclude the Agreement is not a reasonable exercise of the Trustee's business judgment and discretion. Therefore, even if this transaction involved a true sale and qualified for the benefits of § 363(f), the Court could not approve it.

### d. Conclusion

The above problems with the Agreement are not its only issues. For example, the Agreement simply declares that the cash proceeds would become property of the estate; but when property is sold free and clear of an interest under § 363(f), the interest normally attaches to the proceeds with the same validity and priority and to the same extent as it attached to whatever was sold. The proceeds would belong to the estate, but subject to the displaced interest of Rierson, and it is not clear at this juncture what her interest would consume of the $825,000. It is clear that the parties to the stipulation may not, without Rierson's consent, simply declare that the full $825,000 would be the estate's to distribute.

There are other issues, but the above make it clear that the motion must be denied. A separate order will enter accordingly.

Date:  December 19, 2019

_____
Frank J. Bailey
United States Bankruptcy Judge